UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL MICHAEL GALLO,

              Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

              Defendant.
_____

**DECISION AND ORDER**
**No. 13-CV-06528(MAT)**

## INTRODUCTION

Plaintiff Paul Michael Gallo ("Plaintiff" or "Gallo"), filed this action, pursuant to Title XVI of the Social Security Act ("the Act"), codified at 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying his application for Supplemental Security Insurance ("SSI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On July 7, 2010, Plaintiff filed an application for SSI, alleging disability as of May 14, 1997 due to autism. Plaintiff subsequently amended the alleged onset date to the filing date. Administrative Transcript [T.] 37. The application was denied on

October 14, 2010.  T. 71-75.  A hearing was held on October 13, 2011 before administrative law judge ("ALJ") Milagros Farnes. Plaintiff, his mother, and vocational expert ("VE") Diane L. Haller testified at the hearing.  T. 21-57.  On January 6, 2012, the ALJ issued a decision finding that Plaintiff was not disabled since May 23, 2010, the day Plaintiff attained age 18, through January 6, 2012, the date of the ALJ's decision.  T. 28.

On June 21, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-7.  This action followed.

## FACTUAL BACKGROUND

Plaintiff was born in 1992 and was 18 years old on July 7, 2010 when he filed his SSI application.  T. 208, 37.  After graduating from high school in June 2011, Plaintiff participated in a vocational training program where he shadowed different jobs. T. 39-41.

Plaintiff testified that he had a driving permit and was learning to drive at the time of the hearing.  Plaintiff testified further that he had participated in special education when he was in school, that he had been diagnosed with autism, and that his autism affects his ability to learn and interact with others. T. 41-42.  He testified that he has two friends from high school, but that he has not seen them since graduating.  T. 42.

Plaintiff testified that on a typical day, he wakes up, eats breakfast, watches TV, cares for his cat, plays games and does

chores around the house either of his own volition or when his parents leave him a list of things to do. T. 43. Further, Plaintiff testified that he reads fantasy or adventure books, helps his parents grocery shop, fishes with his father, and takes martial arts classes. T. 44-45.

**Relevant Medical and School Evidence**

Plaintiff's school records show that he was diagnosed with autism as a child and received home and school-based services with respect thereto throughout his life. T. 163-207, 211-218, 251-268, 306-313, 319-331, 333-344, 349, 351-362, 366-468, 509-510, 529-542, 553, 556-557, 572-586, 489-616, 647-655.

In a Speech/Language Progress Summary report dated May 3, 2010, speech pathologist for the Marion Central School District Robin Pembroke ("Pembroke") reported that Plaintiff was currently undergoing speech/language therapy to address pragmatic language delays. Pembroke noted that Plaintiff had difficulty remaining focused on topics that did not interest him and knowing when to end discussions. Pembroke recommended that Plaintiff continue speech/language therapy services throughout the 2009-2010 school year. T. 514.

An Individualized Education Program ("IEP") report generated by Plaintiff's school dated May 19, 2010 reflects that Plaintiff was in twelfth grade at that time and had difficulty with thinking abstractly, processing speed, grapho-motor skills, speech and language skills, and organization. T. 164-165. Also on May 19,

2010, Plaintiff saw school social worker Cathy Grasso ("Grasso"), who reported that Plaintiff was pleasant and hard-working, he completed his work and was doing "very well." She noted further that Plaintiff appeared anxious about interactions with people in a work setting in person or on the phone. Grasso recommended that Plaintiff work on adjusting from high school to post-high school in the upcoming year. T. 515.

On September 3, 2010, Plaintiff met with pediatrician Elliot Kaplan, M.D. for a college physical. T. 346-348. Dr. Kaplan diagnosed Asperger's disorder, but noted that Plaintiff was "very high functioning - doing well." T. 347. The examination was otherwise normal. T. 346-348.

On September 27, 2010, psychologist Christine Ransom, Ph.D. performed a consultative examination of Plaintiff and diagnosed Plaintiff with social phobia, currently mild. T. 288. Dr. Ransom recommended psychiatric intervention for social anxiety, and indicated that his prognosis was "fair" to "good" with treatment. Dr. Ransom assessed that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration for simple tasks; maintain a regular schedule and learn simple new tasks. She opined that Plaintiff would have "mild" difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due to social phobia. T. 288.

On September 8, 2011, Dr. Kaplan completed an affidavit in connection with a guardianship petition filed by Plaintiff's mother.  T. 561-564.  Dr. Kaplan indicated that he had last seen Plaintiff in September 2010.  He diagnosed Asperger's disorder and indicated that Plaintiff was "high-functioning" with some limitations in insight and socially appropriate behavior.  Dr. Kaplan opined that Plaintiff was incapable of making healthcare decisions for himself.  T. 564.

On September 14, 2011, pediatrician David Breen, M.D. also completed an affidavit in connection with the guardianship petition.  Dr. Breen reported that he examined Plaintiff that day, and diagnosed him with autism.  Dr. Breen reported that Plaintiff spoke in a soft voice and was pleasant and cooperative.  He opined that Plaintiff was incapable of making healthcare decisions for himself.  T. 567-568.

**The VE's Testimony**

At the hearing, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and vocational profile, who had no exertional limitations, but was limited to simple, routine tasks and working in a low stress environment with occasional decision-making, occasional changes in work setting, occasional judgment required, no production and pace work, who needed to be reminded of tasks twice per day, and also requires a ten minute break every two hours.  T. 59-60.  The VE

testified that such an individual could work as a sorter, grocery bagger, or laundry worker.  T. 59-60.

## DISCUSSION

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  A party's motion will be dismissed if, after a

review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The ALJ evaluated Plaintiff's claim for benefits under the disability standards for both adults and children, although the ALJ ultimately determined that Plaintiff was not disabled since May 23, 2010 (the date he turned age 18) through January 6, 2012 (the date of the ALJ's decision).  T. 16-24.

### A.   The Disability Standard for Children

The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine

whether the claimant has a "severe impairment" or combination of impairments.   Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

Here, the ALJ followed this three-step procedure and determined that Plaintiff was not disabled.   The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the application was filed; (2) had the severe impairment of autism before attaining age 18; and (3) did not have an impairment that meets or equals one of the Listed Impairments listed in Appendix 1, Part A or B, or functionally equaled the severity of an impairment in the Listings before attaining age 18.   T. 16-17, 24.

**B.   The Disability Standard for Adults**

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims for adults.   20 C.F.R. § 404.1520.   Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an

> impairment which is listed in Appendix 1,
> Part 404, Subpart P. If the claimant does not
> have a listed impairment, the Commissioner
> inquires whether, despite the claimant's
> impairment, he has the residual functional
> capacity to perform his past work. If he is
> unable to perform his past work, the
> Commissioner determines whether there is other
> work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The ALJ found that:  Plaintiff did not engage in substantial gainful activity since the date the application was filed;  that since attaining age 18, he has continued to have the severe impairment of autism, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments; that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations; and that, considering Plaintiff's age, education, vocational profile and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, the ALJ concluded that Plaintiff was not disabled from May 23, 2010 through January 6, 2012.  T. 24-28.

**III. The ALJ's RFC Assessment**

Plaintiff contends that the ALJ's RFC assessment is flawed because the ALJ failed to: (1) account for Plaintiff's difficulty with social interactions; and (2) adequately account for Plaintiff's limitations regarding concentration, persistence, and

pace.  Pl's Mem (Dkt. No. 9) at 12-17.  The Commissioner maintains that the ALJ's RFC adequately accounted for Plaintiff's limitations and is supported by substantial evidence.  Def's Mem (Dkt. No. 10) at 12-16.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. § 404.1545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996).  Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to work consisting of simple, routine tasks in low stress environments, with only occasional changes in the work setting, occasional decision-making, occasional use of judgment, and no production pace requirements.  The claimant must be reminded of his work task twice a day, and requires a ten-minute break every two hours."  T. 25.  As the ALJ explained, this RFC was supported by treatment notes from Plaintiff's treating physicians and the opinion of consultative examiner Dr. Ransom.  T. 27.

Specifically, Plaintiff saw pediatrician Dr. Kaplan in early September 2010 for a college physical.  T. 326-348.  Dr. Kaplan noted that Plaintiff was active in Tai Kwan Do, was running track, and enjoyed working with and learning about animals, history, and

culture.  T. 346.  He also reported that Plaintiff was a "[h]ealthy appearing adolescent, well nourished, alert and interactive." T. 347.  Dr. Kaplan assessed Asperger Syndrome, but noted that Plaintiff was "[v]ery [h]igh functioning" and "doing well." T. 347.  Approximately one year later, Dr. Kaplan completed an affidavit in connection with a guardianship petition filed by Plaintiff's mother.  T. 561-564.  At that time, Dr. Kaplan diagnosed Asperger's disorder but again indicated that Plaintiff was "high-functioning," noting only "some limitations in insight and socially appropriate behavior."  T. 562.

Similarly, pediatrician Dr. Breen examined Plaintiff in September 2011, and completed an affidavit in connection with the guardianship petition filed by Plaintiff's mother.  Dr. Breen diagnosed autism, and reported that Plaintiff was "ambulatory and able to speak in a soft voice."  Dr. Breen noted that Plaintiff was "pleasant and cooperative."  T. 566.

Likewise, the findings and observations of consultative examiner Dr. Ransom also supported the ALJ's RFC determination. Specifically, Dr. Ransom assessed social anxiety, but assessed that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration for simple tasks; maintain a regular schedule and learn simple new tasks.  She opined that Plaintiff would have mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due

to his social phobia, which she reported as "currently mild." T. 288. The opinion of a consultative examiner can constitute substantial evidence where, as here, it is consistent with the other evidence in the record. See generally Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995) (opinions of consultative physicians can constitute substantial evidence); see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (same).

Despite the ALJ's thorough discussion of the above evidence, Plaintiff argues that remand is warranted on account of the ALJ's failure to account for or discuss State Agency psychologist Dr. Harding's opinion that Plaintiff was "moderately" limited in various areas of social functioning. Pl's Mem at 12-14; see also Pl's Reply at 4. The Court rejects this argument. Initially, the ALJ was not required to mention or discuss every single piece of evidence in the record. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981). In any event, the record reflects that while Dr. Harding opined in October 2010 that Plaintiff was "moderately" limited in some areas of social functioning, he also determined that Plaintiff was "not significantly limited" in others. Ultimately, Dr. Harding concluded that, despite Plaintiff's "moderate" limitations in various areas, he was still "capable of performing simple tasks." T. 68. Dr. Harding's conclusion, therefore, was consistent with the other evidence in the record (discussed above), which showed

that Plaintiff's autism resulted in some functional limitations, but that these limitations did not prevent him from performing work all types of work.

Plaintiff also argues that the ALJ's RFC assessment is flawed because it did not explicitly account for social worker Grasso's statement that Plaintiff was "anxious" about working with people in person and on the phone.  Pl's Mem at 15.  There is no merit to this argument for several reasons.  First, social workers, like Grasso, are not acceptable medical sources.  20 C.F.R. §§ 416.902, 416.927(d).  "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."  SSR 06-3p, 2006 SSR LEXIS 5.  The ALJ has discretion to determine appropriate weight to accord opinions of other medical sources.  See Diaz v. Shalala, 59 F.3d 307, 313-314 (2d Cir. 1995).  In this case, the ALJ properly discounted this portion of her opinion to the extent it was not consistent with the other evidence in the record, namely Dr. Ransom's assessment that Plaintiff's social phobia was "mild" and that Plaintiff only had "mild" limitations in relating to others.  T. 288.  Grasso's statement was also inconsistent with Plaintiff's own statements that he had at least two friends from high school, participated in vocational training programs, and engaged in martial arts classes.

Further, Plaintiff argues that the ALJ's RFC finding is flawed because it did not account for his mother's testimony that Plaintiff has difficulty recognizing social cues.  Pl's Mem at 15.

The Court finds this argument unavailing.  "As a fact-finder, an ALJ is free to accept or reject the testimony of a parent." F.S. v. Astrue, 2012 U.S. Dist. LEXIS 18865, 2012 WL 514944, at * 19 (N.D.N.Y. Feb. 15, 2012).  It is evident from the text of the ALJ's decision that he considered the lay witness testimony of Plaintiff's mother, as he summarized her testimony at page 25 of the administrative transcript.  He specifically included a discussion of her testimony that Plaintiff's autism "caused delays in processing, difficulty understanding social cues . . . and experiences difficulty keeping on task."  T. 25, 50.  Although the ALJ did not expressly state the weight he afforded to Plaintiff's mother's testimony, he did discuss the testimony in such a way as to make it clear to a reviewer of the decision that he did not fully credit it.  When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur, 722 F.2d at 1040 (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).  As the ALJ explained, Plaintiff's mother's testimony was not consistent with his own observations at the hearing "that the claimant was able to testify without significant difficulty, spoke in an appropriate manner, and did not display any actions or behaviors that could be construed as socially inappropriate."  T. 25.  Moreover, Plaintiff's mother's testimony

was also inconsistent with Plaintiff's reported daily activities, which included participating in martial arts classes, having at least two friends from high school, and that he participated in vocational training programs.   T. 224, 228, 366-557.   Further still, Plaintiff's mother's testimony was inconsistent with the particular  observation of pediatrician Dr. Breen that Plaintiff was  "alert and interactive."

Finally, the Court finds no merit to Plaintiff's argument that the ALJ failed to take into account Plaintiff's limitations regarding concentration, persistence and pace.  In support of this argument, Plaintiff points to various school records which show that Plaintiff "consistently had difficulty maintaining attention for tasks[.]"  Pl's Mem at 16.  As an initial matter, the Court notes that some of the school/childhood records Plaintiff points to in support of this contention -- i.e., T. 196-197, 385, 391, 392 -- significantly pre-date the relevant time period.  In any event, as the  ALJ  pointed  out  in  his  decision,  while  Plaintiff's school/childhood records showed that his autism affected his ability to maintain concentration, persistence and pace, it did so only to a "mild" to "moderate" degree. T. 25-26.  The ALJ accounted for  Plaintiff's  diminished  ability  to  maintain  concentration, persistence and pace in his non-exertional limitation assessment by limiting Plaintiff to work consisting of simple, routine tasks in low-stress environments, with only occasional changes in the work setting, occasional decision-making, occasional use of judgment, no

production-pace requirements, that he must be reminded of his work task twice a day, and that he requires a break every two hours. T. 24-25.

In sum, the Court finds that the ALJ's RFC was proper as a matter of law and is supported by substantial evidence in the record.

## IV.   The Disability Standard & the ALJ's Step 3 Determination

Plaintiff argues that the ALJ erred by applying the childhood disability standard to Plaintiff's case, despite the fact that he was an adult during the relevant time period. Pl's Mem. at 18. He also argues that the ALJ erred at Step 3 of his analysis in determining that Plaintiff's autism did not meet or medically equally Listing 12.10. Id. at 18-19; see also Reply at 2-3. The Commissioner counters, arguing that the ALJ properly applied the adult disability standard and his Step 3 analysis is supported by substantial evidence. Def's Mem at 9-10.

The Court finds no merit to Plaintiff's argument that the ALJ erred in applying the childhood disability standard to his claim. As stated above, Plaintiff amended his alleged onset date to the date he filed his SSI application (July 7, 2010), and the ALJ analyzed Plaintiff's claim under both the childhood disability standard (for the period prior to his 18th birthday) and the adult disability standard (for the period after his 18th birthday, which included the time beginning on July 7, 2010). T. 12-28. The ALJ ultimately concluded that Plaintiff was not disabled since May 23,

2010, the day he attained age 18, and thus it was not necessary for him to even analyze the claim under the disability standard.

In his Reply (Reply at 1-2), Plaintiff claims that the ALJ's additional analysis was prejudicial to him because it "detracted from a proper evaluation under the adult standard."  Reply at 1.  The Court rejects this argument.  A review of the decision and the related record shows that the ALJ properly set forth and analyzed Plaintiff's claim under the five-step adult disability standard.  Moreover, the additional analysis under the childhood disability standard, if anything, was beneficial to Plaintiff because it helped to provide a complete and more detailed account of Plaintiff's history of autism over the course of his life.

The Court also finds no merit to Plaintiff's contention that the ALJ erred at Step 3 of his analysis in determining that Plaintiff's autism did not meet or medically equal Listing 12.10.  In analyzing Plaintiff's claim under the adult disability standard, the ALJ stated, "I have reviewed the record as a whole and find that the severity of the claimant's severe impairment does not meet or equal any section of the Social Security listing."  T. 24.  While Plaintiff is correct in pointing out that the ALJ did not explain how he arrived at this conclusion or specify any particular Listing he considered, he did state that he considered Listing 112.10 (Autistic Disorder and Other Pervasive Developmental Disorders) when reviewing Plaintiff's claim under the childhood

disability standard, and the language of that Listing which mirrors the language for adult disability Listing 12.10 (Autistic Disorder and Other Pervasive Developmental Disorders).

To meet the requirements of Listing 112.10, a claimant first must have an autistic disorder or other pervasive development disorder characterized by "qualitative deficits" in development of reciprocal social interaction, verbal and nonverbal communication skills, and imaginative activity. In addition, the claimant must exhibit a markedly restricted repertoire of activities and interests (Paragraph "A" criteria). See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.10(A). Second, the claimant must establish that his disorder results in at least two marked impairment-related functional limitations (Paragraph "B" criteria). Id., at § 112.10(B). Here, the ALJ reviewed the record and determined under the child disability standard that the record "does not evidence qualitative deficits in the development of reciprocal social interactions or qualitative deficits in verbal and nonverbal communication and imaginative play. Nor does the claimant's records evidence markedly restricted repetoire of activities and interests. T. 19 (citing Exs. 1F to 25F). The ALJ discussed, in detail, the evidence supporting this conclusion when he analyzed Plaintiff's claim under the child disability standard. T. 19. For example, he pointed out that despite Plaintiff's autism, he was able to obtain a high school diploma. T. 19. He also noted that

school speech pathologist Pembroke reported in early May 2010 that Plaintiff's receptive language was within the low end of the normal range and that he exhibited only "mild" delays, his expressive language showed only moderate limitation, and his pragmatic language was within the mild to moderate range.  The ALJ also pointed out that Plaintiff's treatment notes from Continuing Development Services dated from 2007 to 2010 showed that Plaintiff did not require any adaptive equipment or environment modification. The ALJ also noted that Plaintiff was independent in the areas of the community he was familiar with, could be left alone for up to 8 hours, and did not require supervision while being transported. T. 19 (citing Exs. 1F through 25F).  While the ALJ did not separately perform a similar analysis when reviewing Plaintiff's claim under the adult disability standard at Step 3, there is no evidence suggesting that Plaintiff's condition deteriorated after his 18th birthday in any meaningful way that would have altered the ALJ's analysis.  Moreover, as the ALJ noted when evaluating Plaintiff's RFC at Step 4 (T. 25-26), the evidence in the record showed that Plaintiff "can generally perform his activities of daily living in an age-appropriate manner, can interact socially with only mild to moderate limitations, and can maintain concentration, persistent and pace with a mild to moderate degree of difficulty." T. 26.  The ALJ pointed out that Plaintiff's speech delays lessened over the course of his schooling, and that

Plaintiff was able to maintain a conversation with him at the hearing "without significant difficulty." T. 26. He also pointed out that Plaintiff reported being able to use the microwave, toaster, and prepare meals for himself, is able to self-medicate, can exist in his home independently in the case of an emergency, and can handle small amounts of money on a weekly basis. T. 26, 366-557.

As a final matter, the Court rejects Plaintiff's argument that the ALJ was derelict in his duty to develop the record by failing to obtain the opinion of a medical expert to determine if Plaintiff's autism equaled a Listing. Pl's Mem. at 20. He cites to SSR 96-6p in support of his contention, which provides that the ALJ must obtain an updated medical opinion from a medical expert:

> 1. When no additional medical evidence is received, but in the opinion of the administrative law judge, of the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> 2. When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Neither situation considered by SSR 96-6p, 1996 SSR LEXIS 3 is present in this case. First, the record contains an opinion from a medical expert that no Listing was met or equaled. Specifically,

State Agency consultant Dr. Harding reviewed the evidence in the file and determined that Plaintiff was not disabled.  T. 68, 290-305.  Dr. Harding found that Plaintiff's autism did not meet or equal any Listed Impairment, and he also reported that Plaintiff had some friends, his thought processes were goal-directed and coherent, his attention, concentration, and memory were intact, his insight and judgment were good and he could perform most household chores.  T. 68.  The opinions of non-examining physicians can constitute substantial evidence when, as here, they are consistent with other medical evidence of record.  <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).

Nor does Plaintiff meet the second criteria of SSR 96-6p, 1996 SSR LEXIS 3.  Neither Plaintiff nor the record present any additional medical evidence received after Dr. Harding's findings that could reasonably be expected to change his opinion.

Accordingly, the Court finds that the ALJ's Step 3 analysis is proper as a matter of law and is supported by substantial evidence in the record.

**V.   The ALJ's Credibility Determination**

Plaintiff argues that the ALJ's credibility determination is flawed because it "is unclear for what reasons the ALJ found Plaintiff 'not entirely credible,'" it failed to consider the "extensive measures Plaintiff and his family took throughout his lifetime to manage his symptoms," and because it failed to consider

that Plaintiff "required a highly supportive environment both at school and at home." Pl's Mem at 20-21. The Commissioner maintains that the ALJ properly assessed Plaintiff's credibility and his determination is supported by substantial evidence. Def's Mem at 15-16.

A claimant's statements of pain or other subjective symptoms cannot alone serve as conclusive evidence of disability. Genier v. Astrue, 606 F.3d 46, 49 (2d. Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). In evaluating a claimant's assertions of his subjective symptoms, the ALJ must follow a two-step analysis. Id. First, the ALJ determines if a claimant has a "medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). Second, if an impairment of that nature is present, the ALJ must then determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the administrative record. Id. (alteration in original) (quoting 20 C.F.R. § 404.1529(a).

If the plaintiff offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, "the ALJ must engage in a credibility inquiry." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)). In making this credibility

determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.   20 C.F.R. § 404.1529(c)(3)(i)-(vii); see also Meadors, 370 F. App'x at 184 n.1.   "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility," his decision to discredit subjective testimony is "entitled to deference" and may not be disturbed on review if his disability determination is supported by substantial evidence.   Brown v. Astrue, No. CV-08-3653, 2010 U.S. Dist. Lexis 62348, at *19 (E.D.N.Y. June 22, 2010) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999); Aponte v. Sec'y of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).

Here, following the two-step analysis for evaluating a claimant's assertions of his subjective symptoms, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms[.]" T. 18. At step two, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible." T. 19, 25. The ALJ discussed the credibility factors set forth above in his evaluation of Plaintiff's credibility and set forth sufficient reasoning for discounting Plaintiff's statements, explaining that Plaintiff's "medical records, and the testimony at the hearing do not support the assertion that the claimant's autism causes such severe limitations in his ability to function to render him disabled under the [A]ct." T. 25.

Specifically, the ALJ noted that Plaintiff testified that his autism makes it difficult for him to learn and that it affects his ability to pay attention to certain activities. T. 25. However, as the ALJ noted, Plaintiff also testified that he is learning to drive, attended a vocational job training program, that he is able to complete chores (although he sometimes he can forget to perform them), and that he is able to follow a list of chores left by his mother. Additionally, the ALJ pointed out that Plaintiff reported that he is able to care for his pet cat, read, fishes, and takes martial arts classes. Further, the ALJ noted that Plaintiff reported that he uses the internet to watch videos. T. 25.

The ALJ also discussed Plaintiff's mother's testimony. He acknowledged that while Plaintiff's mother testified that Plaintiff sometimes forgets to perform chores, she nonetheless testified that Plaintiff is able to perform chores and tasks. She also testified that Plaintiff has a savings account that she is teaching him to

use, and that Plaintiff uses the internet to research things that interest him.  T. 25.

In arriving at his credibility determination the ALJ also discussed the school and medical evidence in the record, which showed that despite having suffered from autism from a young age, Plaintiff still retained "significant" functional abilities as an adult.  T. 17-21, 26.  The ALJ discussed Plaintiff's treatment history and noted, in particular, that "the claimant's speech delays lessened over the course of his schooling."  T. 17-21, 26. The ALJ also discussed the September 27, 2011 report from Dr. Ransom, in which she assessed that Plaintiff was cooperative, socially appropriate, that his mental status exam was generally within normal limits, his cognition was low average, and he had good insight and judgment.  T. 26, 286-288.  The ALJ also discussed the September 14, 2011 affidavit from Plaintiff's pediatrician Dr. Breen, in which he reported that Plaintiff was ambulatory and spoke in a soft voice.  T. 26, 565-568.

Accordingly, the Court finds that the ALJ properly discounted Plaintiff's allegations of disabling symptoms related to his autism during the relevant time period to the extent they were inconsistent with the other evidence in the record.  The ALJ's credibility determination is therefore supported by substantial evidence.

**VI.   The ALJ's Step 5 Determination**

Plaintiff argues that the ALJ's Step 5 determination is unsupported by substantial evidence because the ALJ relied on VE testimony elicited in response to an incomplete and unsupported hypothetical.  Pl's Mem at 21-22.  The Commissioner asserts that the ALJ's Step 5 is supported by substantial evidence in the record.  Def's Mem at 16-17.

In this case, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and vocational profile, who had no exertional limitations, but was limited to simple, routine tasks and working in a low stress environment with occasional decision-making, occasional changes in work setting, occasional judgment required, no production and pace work, who needed to be reminded of tasks twice per day, and also requires a ten minute break every two hours.  T. 59-60.  The VE testified that such an individual could work as a sorter, grocery bagger, or laundry worker.  T. 59-60.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998).  The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983).  A VE's opinion in

response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. See DeLeon v. Secretary of Health and Human Servs., 734 F.2d. 930, 936 (2d Cir. 1984). The ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §404.1560(b)(2). Here, there is substantial evidence in the record to support the ALJ's RFC assessment, and the Court therefore finds that the ALJ's Step 5 determination is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings is granted, the Plaintiff's motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 11, 2014
           Rochester, New York